UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROSA GARO,<br><br>　　　　　　Plaintiff,<br><br>-against-<br><br>TENAGLIA & HUNT, P.A.,<br><br>　　　　　　Defendant. | Case No.: 24.cv-9812<br><br>**COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff Rosa Garo, by and through her attorneys at Manhattan Legal Services, for her Complaint against Defendant Tenaglia & Hunt, P.A. alleges as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff Rosa Garo brings suit against Defendant Tenaglia & Hunt P.A. for their violations of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692 *et seq.*, New York General Business Law § 349 *et seq.*, and New York Judiciary Law § 487.

2. Rosa Garo ("Plaintiff") is a disabled New York City resident whose only source of income is Social Security. On or about January 4, 2024, Defendant Tenaglia & Hunt, P.A. ("Defendant") sued Plaintiff on behalf of their client Barclay's Bank Delaware ("Barclays") for a debt Plaintiff did not owe. The debt that Defendant sought to collect was the result of identity theft, which Plaintiff reported to the police in addition to disputing the charges with Barclays. Even after its client determined Plaintiff did not owe the fraudulent charges, Defendant failed to discontinue the action promptly. Instead, Defendant prolonged the litigation by attempting to

1

condition the discontinuance on Plaintiff signing a broad release to protect Defendant from liability for its attempts to collect on a debt that was not owed. Defendant's actions caused Plaintiff actual damages, including costs associated with defending the lawsuit and emotional distress.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over Plaintiff's claims under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, ("FDCPA") pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

4. The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because they share a common nucleus of operative facts with the federal claims and are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

5. Venue in this District is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in the District and Defendant regularly conducts business in the District.

## PARTIES

6. Plaintiff is an individual currently residing in New York County, New York.

7. Plaintiff is a "consumer" as defined by the FDCPA, 15 U.S.C. §1692a(3).

8. Defendant Tenaglia & Hunt, P.A. is a New Jersey Professional Corporation which maintains an office in New York at 5 Penn Plaza, 23rd Floor, New York, NY 10001.

9. Defendant is a debt collection law firm and is registered as a debt collection agency with the New York City Department of Consumer and Worker Protection ("DCWP") under license number 2047462.

10. Defendant identifies itself as a debt collector on court papers it files and in correspondence.

11. Defendant files thousands of consumer credit transaction lawsuits in New York State annually to collect consumer debts owed to another.

12. Upon information and belief, Defendant regularly collects consumer debts owed or due another through debt collection letters sent by mail.

13. Upon information and belief, the collection of consumer debts is Defendant's principal purpose.

14. Defendant is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

## STATUTORY FRAMEWORK

### The Fair Debt Collection Practices Act

15. Congress enacted the Fair Debt Collection Practices Act ("FDCPA") to stop "the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a).

16. The FDCPA applies to consumer debt, which is any obligation or alleged obligation to pay money "arising out of a transaction" entered into "primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5).

17. The FDCPA imposes a duty of care on debt collectors when collecting debts from consumers.

18. Under the FDCPA, "a debt collector may not use any false, deceptive, or misleading representations or means in connection with the collection of any debt. 15 U.S.C. § 1692e.

19. Prohibited conduct in violation of this section includes, but is not limited to:

      a.      "The false representation or implication of the character, amount, or legal status of any debt."  15 U.S.C. § 1692e(2).

      b.      "The threat to take any legal action that cannot legally be taken or that is not intended to be taken."  15 U.S.C. § 1692e(5)

      c.      "Communicating or threatening to communicate to any person credit information which is known or which should be known to be false."  15 U.S.C. § 1692e(8).

      d.      "The use of any false representation or deceptive means to collect or attempt to collect any debt." 15 U.S.C. § 1692e(10).

20.     A debt collector is further prohibited from the "use of unfair or unconscionable means to collect or attempt to collect a debt", including but not limited to "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

21.     In addition, a debt collector may not "engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."  15 U.S.C. § 1692d.

22.     If a consumer disputes the validity of the debts in writing within thirty days of the debt collector's initial communication with the consumer regarding the collection of the debt, the debt collector must "cease collection of the debt, or any disputed portion thereof" until the debt collector obtains and sends to the consumer such verification. 15 U.S.C. § 1692g(b).

23.     An individual may recover $1,000 in statutory damages from a debt collector who violates the above provisions of the FDCPA. 15 U.S.C. § 1692k(a)(2)(A).

24.     An individual may also recover any actual damages sustained as a result of a debt collector's violations of the FDCPA. 15 U.S.C. § 1692k(a)(1).

25. In a successful action, an individual may recover costs and reasonable attorney's fees as determined by the court. 15 USC § 1692k(a)(3).

### The New York Consumer Protection Act - General Business Law § 349

26. New York prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349(a).

27. An individual "injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions." N.Y. Gen. Bus. Law § 349.

28. The damages award may be increased to an amount not to exceed three times the actual damages up to $1,000 if a court finds the Defendant willfully or knowingly violated this section. N.Y. Gen. Bus. Law § 349(h).

### New York Judiciary Law § 487

29. New York Judiciary Law § 487 provides a private cause of action against an attorney or counselor who "[i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party." N.Y. Jud. Law § 487.

30. As interpreted by the courts, the act of deceit or collusion must be extreme or egregious to violate N.Y. Jud. Law § 487. A single egregious act or a broad pattern of deceptive filings can establish a violation of the section.

31. Willful delays of a client's lawsuit for an attorney's own gain also violates N.Y. Jud. Law §487.

32. For a party to be eligible for relief under Judiciary Law §487, the party must establish the deceitful conduct was the proximate cause of the harm experienced.

33.     Any such attorney or counselor who violates the statute "forfeits to the party injured treble damages, to be recovered in a civil action." N.Y. Jud. Law § 487. Forms of harm which are entitled to relief under the statute include the costs of defending a frivolous action.

### 22 N.Y.C.R.R. § 130-1.1a and § 130-1.1(c)

34.     Under the New York Administrative Code, when an attorney signs a pleading, the attorney certifies that the case being filed is not frivolous. 22 N.Y.C.R.R. § 130-1.1a. The Administrative Code requires that prior to making a certification, the attorney must investigate which is reasonable under the circumstances. *Ibid*.

35.     The definition of frivolous in Section 130-1.1(c) includes a claim that completely lacks merit and cannot be supported by a good faith argument for a modification, extension or reversal of existing law; and a claim that asserts material factual statements which are false.

### STATEMENT OF FACTS

36.     Plaintiff is a disabled fifty-eight-year-old Manhattan resident whose only source of income is Social Security.

37.     Plaintiff is a natural person who applied for and was approved for an individual Barclays JetBlue Plus World Elite Mastercard ("JetBlue Card"), which she held for approximately ten years and only used to purchase goods and services primarily related to travel for her personal, family, and/or household use.

**The Fraud**

38.     On March 29, 2021, Plaintiff received a phone call from Barclays on her home landline.

39.     Barclays informed Plaintiff they had identified recent suspicious transactions on her account which had been made in midtown Manhattan shortly before they spoke to her.

40. Plaintiff explained that she was in her home on the Lower East Side at the time and therefore could not have made the charges.

41. Plaintiff confirmed that she had both account cards in her possession, one in her name and a second authorized user card in her son's name.

42. Plaintiff had applied for an authorized user card for her son as a means for him to build credit, but he had never used it and did not have access to it because she kept it in her possession.

43. Barclays allowed the nearly $4000 in transactions to go through, despite the fact that Barclays itself had flagged them as suspicious and Plaintiff had confirmed they were unauthorized.

44. The fraudulent and disputed charges consisted of a $2083 purchase at a Bergdorf Goodman ("Bergdorf") store and two separate cash advances of $1000 and $803 each.

45. Plaintiff disputed the charges to Barclays the same day that they were made and was given a reference number of 121950.

46. On March 30, 2021, the day after the charges were made, Plaintiff went to Bergdorf herself to investigate.

47. Plaintiff spoke with a Bergdorf manager named Yvonne, who informed her that the store had security cameras which would have recorded the fraudulent purchases but that they could only release the recording to the police.

48. That same day, Plaintiff filed a report with the police under number 2021-7-3151 (the "Police Report") on March 30, 2021.

49. After Bergdorf provided a copy of the security camera footage to the police, Plaintiff had an opportunity to review it with the detective assigned to her case.

50. The recording showed a young white man, unknown to Plaintiff, who was wearing a hooded sweatshirt and appeared to be trying to hide his face from the camera.

51. Plaintiff informed Barclays about the recording, what it showed, and that she had filed a police report.

52. Barclays responded to Plaintiff's dispute of the charges through letters addressed to her son, Israel Garo, although Plaintiff disputed the charges herself and was the account holder.

53. In letters dated June 1, 2021, and June 2, 2021, Barclays informed Plaintiff that it had completed its investigation of the disputed charges and determined that the accountholder had no liability for the charges; however, it indicated that if the merchant validated the transactions, Barclays might revisit the dispute and place the charges back on the account.

54. Barclays further stated that if it did revisit the dispute, it would provide a written explanation of its decision as well as any relevant documentation.

55. The letters did not specify which of the fraudulent charges they referred to.

56. In a letter dated June 7, 2021, Barclays stated they had reversed the provisional credit they had issued for the fraudulent transaction at Bergdorf after determining the charges were authorized, but provided no explanation for its decision or any documentation to support it.

57. Although Barclays' June 7, 2021 letter only referenced the charges at Bergdorf, it reversed the credits for all three fraudulent charges.

58. On July 28, 2021, Plaintiff contacted the Federal Trade Commission to report the identity theft and was given a reference number of 137637026.

**The Civil Court Action**

59. On January 4, 2024, Defendant filed a Summons and Complaint at the Civil Court of the City of New York, County of New York on behalf of its client Barclays captioned *Barclays Bank Delaware v. Rosa Garo*, under Index No. CV-000280-24/NY (hereafter "Civil Court Action").

60. The Civil Court Action sought to recover $3965.94, the amount of the fraudulent charges made to Plaintiff's JetBlue card.

61. Upon information and belief, Defendant failed to review the account history related to the debt prior to filing the Civil Court Action, including, but not limited to, Plaintiff's disputes or the account agreement, which, upon information and belief, limits the account holder's liability for fraudulent charges to $0 when the fraudulent charges are reported promptly.

62. When she was served with the Summons and Complaint in the Civil Court Action, Plaintiff was alarmed and panic-stricken, even though she knew she did not owe the money.

63. She felt depressed, frustrated and powerless.

64. She had not been able to resolve the debt even though she had done everything she was supposed to do, including disputing the debt with Barclays, filing an identity theft report with the Fair Trade Commission ("FTC"), filing a police report, and conducting her own investigation, including reviewing Bergdorf's recording of the incident.

65. Plaintiff felt that if all that had not been enough, she was at a loss as to what more she could do to prove to a court that she did not owe the debt.

66. She experienced anxiety, sleeplessness, stress and headaches, as well as stomach aches.

67. Plaintiff was ashamed and embarrassed that her neighbors would have seen the process server, know that she had been sued, and would assume that she was in debt.

68. Plaintiff had prided herself on always paying her bills and living within her means, but felt that she had now lost the good reputation she had built over the years, without having done anything to deserve it.

69. Plaintiff filed a *pro se* Answer to the Civil Court action on January 22, 2024.

70. She felt exhausted and alone; even though she knew she was a strong person, she did not know if she could continue to fight the debt with no one to support her.

71. On or about January 29, 2024, Plaintiff retained counsel at Manhattan Legal Services and filed an amended answer which included additional defenses under the Truth in Lending Act.

72. On approximately February 2, 2024, Plaintiff's attorney informed Defendant by letter that the debt it was attempting to collect was not owed because it was the result of identity theft.

73. The letter outlined many of the steps that Plaintiff had taken to dispute the debt, including Plaintiff initiating a dispute of the charges with Barclays and reporting the fraud to the police and the FTC.

74. Plaintiff's attorney attached copies of the Police Report and a copy of the FTC identity theft affidavit to the letter.

75. On February 29, 2024, the first court date, Defendant requested an adjournment to complete a fraud investigation.

76. More than a month after the court date and two months after Plaintiff's counsel's letter, Plaintiff received a letter from Barclays dated April 3, 2024, stating it was conducting another fraud investigation.

77. A few weeks later, on the adjourned date of April 25, 2024, Defendant informed Plaintiff and the Civil Court that its client had concluded its investigation and determined the charges were authorized, so the Civil Court Action would continue.

78. On or about May 1, 2024, Plaintiff received her monthly JetBlue Card statement covering the period from April 1, 2024 through April 24, 2024, the day before the court date.

79. The statement showed that Barclays had credited the disputed charges back to Plaintiff's account, contradicting Defendant's representation to the Civil Court that Barclays had concluded the charges were authorized.

80. Plaintiff's counsel called Defendant's office repeatedly on May 2, 2024, but was unable to reach anyone and left a message; no one returned her call.

81. On May 3, 2024, Plaintiff's counsel called Defendant again and reached Jason Kim, an attorney employed by Defendant, who informed her that Defendant was aware that the charges had been credited back, but was waiting to hear from Barclays whether the credit covered the entire amount sued for.

82. Plaintiff's counsel referenced the Complaint and read Mr. Kim the amount sued for, all of which was covered by the credit.

83. Instead of agreeing to discontinue the action, Mr. Kim asked Plaintiff's counsel to call him back in a few days.

84. On May 7, 2024, Mr. Kim informed Plaintiff's counsel that the crediting back of the fraudulent charges was permanent, that Barclays would discontinue the Civil Court action, and that Defendant would send her a stipulation of discontinuance.

85. On May 8, 2024, David Sussman, an attorney employed by Defendant, emailed Plaintiff's Counsel a six page "General Release and Settlement Agreement" ("Release") rather than the agreed upon Stipulation of Discontinuance.

86. The Release required Plaintiff to release Barclays and, most notably, Defendant from "any and all claims, demands, contracts, expenses, liens, covenants, debts, attorneys' fees, costs, causes of action, damages, judgments, orders, and liabilities (collectively 'Claims') of whatever kind or nature in law, equity, or otherwise, whether now known or unknown, suspected or unsuspected, accrued or unaccrued, and whether or not concealed or hidden, which [Plaintiff] now owns or holds or has at any time heretofore owned or held against the Released Parties."

87. Further, Defendant sought to have Plaintiff agree not to file "any appeals, claims, complaints, affidavits, arbitrations or other proceedings ('Proceedings') against the Released Parties with any court, arbitration forum or with any regulatory or administrative agency with respect to the matters released and any such Proceedings filed prior to the execution of this Settlement Agreement shall be immediately dismissed with prejudice or withdrawn with prejudice."

88. In addition, Defendant's proposed Release included a confidentiality clause, a non-disparagement agreement, a waiver of unknown claims, and a statement that Barclays denied Plaintiff's defenses, including her defense that she did not incur the debt, although Barclays had determined the fraudulent charges were unauthorized.

89. The Release provided by Defendant conditioned the discontinuance of the action on Plaintiff's executing the Release.

90. It did not provide for a discontinuance with prejudice, despite Barclays' determination that Plaintiff was not liable for the debt.

91. The Release also specified Barclays could take up to thirty days after the execution of the proposed agreement to discontinue the Civil Court Action.

92. The Release was so far-reaching that it even required Plaintiff to provide Defendant with a copy of a W-9, although the Release made no provision for any payment to Plaintiff.

93. The Release referenced consideration for its provisions, however Barclays had not offered any consideration to Plaintiff; instead it had only agreed to take steps it was legally required to take, such as stopping collection of a debt it acknowledged was not owed, and agreeing not to sell or report the debt that it acknowledged Plaintiff did not owe.

94. Plaintiff, overwhelmed by the Court action, felt pressured to sign the Release just to get the court case over with.

95. Plaintiff's counsel contacted Defendant and pointed out the provisions in the Release that were inappropriate and overreaching, as well as that it was not in fact a stipulation of discontinuance.

96. Defendant continued to push for its terms, saying its client insisted on the language.

97. Upon information and belief, it is not Barclays' policy to insist on a release of this nature in debt collection actions it initiates in Civil Court.

13

98. On June 5, 2024, approximately six weeks after Barclays determined Plaintiff was not liable for the debt, and only after Plaintiff's counsel informed Defendant that its refusal to discontinue the action was potentially a violation of the FDCPA, Defendant finally executed a stipulation without a release, which discontinued the Civil Court Action with prejudice and acknowledged that Barclays had determined the charges to be unauthorized.

**Defendants' pattern and practice**

99. Defendant identifies itself as a debt collector in consumer debt collection actions filed in New York State courts, as well as in correspondence, including e-mails, related to consumer debt collection.

100. Defendant is licensed by the New York City Department of Consumer and Worker Protection as a debt collector.

101. According to its website, Defendant litigates consumer debt collection cases in New York, New Jersey, Delaware, Maryland, Virginia, Washington D.C., North Carolina, and South Carolina, and is known nationally for its consumer debt collection practice, as well as for pre-litigation consumer debt collection and judgment enforcement.[1]

102. According to its website, Defendant currently employs seventeen (17) attorneys with only three attorneys identified as being admitted to practice in New York.

103. According to New York State's online E-court records, Defendant filed over 2400 debt collection lawsuits in New York State in 2023 alone, currently has over 4600 active cases in New York State county courts, and of those active cases, 560 have future appearances calendared although upon information and belief, as stated above, Defendant employs only three attorneys barred in New York.

---

[1] https://www.tenagliahunt.com/practice-areas/consumer-collections

104. The high volume of collection actions filed by Defendant in itself suggests that Defendant has a broad pattern and practice of filing collection actions without meaningful attorney review.

105. Upon information and belief, Defendant makes broad use of legal process in the collection of putative debts without engaging in meaningful review, thereby making false representations to consumers and the courts.

106. Upon information and belief, Defendant engages in a broad pattern and practice of deceitful conduct by prolonging litigation it knows to be baseless.

## FIRST CAUSE OF ACTION
### Violation of the FDCPA, 15 U.S.C. §§ 1629e and 1692f

107. Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

108. The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).

109. Defendant violated the FDCPA, §§ 1692e, 1692f, by using false, deceptive, and misleading representations and means and by engaging in unfair and unconscionable practices in connection with the collection of the alleged debt from Plaintiff.

110. Defendant's violations include, but are not limited to:

   a. In bad faith, unduly prolonging legal proceedings after receiving proof that the debt it sued on was not valid;

   b. Failing to investigate and/or stop the civil court action after receiving notice that the debt was not owed by Plaintiff;

15

    c. Failing to conduct a reasonable investigation prior to filing a frivolous complaint; and

    d. Refusing to discontinue an action its client had acknowledged was not owed unless Plaintiff signed a settlement agreement which included a release from liability for Defendant's own misconduct.

111. These are concrete and particularized injuries that have a close relationship to harms traditionally recognized as providing a basis for lawsuits in United States courts which are analogous to common law claims like malicious civil prosecution, abuse of process, defamation, and other wrongful litigation torts.

112. Defendant's violations caused Plaintiff actual harm including the costs of defending the baseless action and emotional distress.

113. As a result of the above FDCPA violations, Defendant is liable to Plaintiff for statutory damages in an amount to be determined at the time of trial, but not less than $1,000 per violation; actual damages, including emotional distress; reasonable attorney's fees; and costs.

## SECOND CAUSE OF ACTION
Violation of N.Y. Gen. Bus. L. § 349 *et seq.*

114. Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

115. Defendant violated N.Y. Gen. Bus. Law § 349 *et seq.* by using deceptive acts and practices in the conduct of their businesses, including, but not limited to making false representations in court filings that Plaintiff owed a debt that she did not owe; and continuing to collect on the debt after it had notice that the debt did not belong to Plaintiff. These acts were done by Defendant systematically, and, as such, have had a broad impact on consumers at large.

116. Defendant committed the above described acts willfully and/or knowingly.

117. Defendant's deceptive consumer-oriented acts and practices are misleading to a reasonable consumer in a material way.

118. Defendant's wrongful and deceptive acts have caused injury and damages to Plaintiff and unless enjoined will cause further irreparable injury.

119. As a direct and proximate result of Defendant's violations of N.Y. Gen. Bus. Law § 349 *et seq*, Plaintiff suffered compensable harm, including emotional distress and the costs associated with defending the Civil Court Action.

120. Plaintiff is entitled to preliminary and permanent injunctive relief barring Defendants from engaging in such deceptive acts and practices, and to recover actual, treble, exemplary, and punitive damages, together with costs and attorney's fees.

### THIRD CAUSE OF ACTION
Violation of N.Y. Judiciary Law § 487.

121. Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

122. Defendant engaged in egregious conduct which violated N.Y. Jud. Law § 487 by, *inter alia*, filing a court action to recover a debt from Plaintiff despite clear evidence that Plaintiff did not owe the putative debt and continuing to delay the case even after its client agreed that the debt was not owed.

123. Upon information and belief, based on the large volume of cases filed by Defendant, Defendant engages in a broad practice of filing court cases without making a meaningful review or reasonable investigation into the facts of each case.

124. By signing the complaint, Defendant made a false representation that it had engaged in a reasonable investigation to ensure that the action was not frivolous and a meaningful review to ensure its cause of action was meritorious.

125. Defendant's conduct was deceitful and calculated to delay the civil court action for its own benefit, including its failure to discontinue the Civil Court Action for over a month after its client determined that Plaintiff was not liable for the debt and its insistence that Plaintiff sign a release of claims against Defendant.

126. Upon information and belief, Defendant engages in a broad practice of requiring general releases to discontinue debt collection actions where the debt is not owed or was disputed.

127. Defendant's acts of deceit and/or collusion and legal delinquency violated N.Y. Judiciary Law.

128. In addition, Defendant made false material representations to the Civil Court and to Plaintiff that its client had found the debt to be authorized after an investigation when its client had issued an account statement crediting back the charges because it had determined they were unauthorized.

129. The deceitful conduct of Defendant caused actual damages to Plaintiff, including emotional distress.

130. Defendant is liable to Plaintiff for treble damages pursuant to N.Y. Judiciary Law § 487.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court grant the following relief:

a. A declaration that Defendant committed the violations of law alleged herein;

b. An order enjoining Defendant from committing similar actions in the future;

c. An award of actual, compensatory, and statutory damages;

d. An award of treble damages;

   e. An award of exemplary and punitive damages;

   f. An award of costs and reasonable attorney's fees;

   g. An award of pre-judgment and post-judgment interest as allowed by law; and

   h. All other relief, in law and in equity, both special and general, to which Plaintiff may be justly entitled.

## **DEMAND FOR A JURY TRIAL**

In accordance with Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues so triable.

Dated: December 20, 2024

                                Respectfully submitted,

                              /s/
                            MANHATTAN LEGAL SERVICES
                            By:   Mary McCune, Esq. (MM3298)
                                   Caitlin Goldman, Esq.
                                   Washcarina Martinez Alonzo, Esq.
                            1 West 125th St., 2nd Floor
                            New York, NY 10027
                            Phone/Fax: (646) 442-3143
                            mmccune@lsnyc.org
                            cgoldman@lsnyc.org
                            wmartinezalonzo@lsnyc.org
                            *Attorneys for Plaintiff Rosa Garo*